## STATE OF IOWA;

### DES MOINES, DECEMBER TERM, A. D. 1871.

IN THE TWENTY-SIXTH YEAR OF THE STATE.

PRESENT:

HON. JAMES G. DAY, CHIEF JUSTICE.
    "     JOSEPH M. BECK,
    "     CHESTER C. COLE,     } JUDGES.
    "     WILLIAM E. MILLER,

## THE STATE OF IOWA v. JONES.

1. Instruction: ASSUMPTION OF FACTS. An assumption by the court in an instruction to the jury in a criminal prosecution, that certain statements made by the defendant amount to a confession, when in fact they merely furnish evidence to be considered by the jury in arriving at the general verdict, is prejudicial error.

VOL. XXXIII. — 2

*Appeal from Polk District Court.*

SATURDAY, DECEMBER 9.

THE defendant was indicted for the larceny of a horse in Polk county, Iowa, on the 6th day of June, 1869, the property of Ainsworth & Bonbright, and of the value of $100. On a plea of "not guilty," he was tried, convicted and sentenced to the State penitentiary for three years. From this judgment he appeals. The further facts necessary to a proper understanding of the case are stated in the opinion.

*Phillips & Phillips* for the appellant.

*Henry O'Conner*, Attorney-General, for the State.

MILLER, J. — I. On the trial, Samuel Corson testified on the part of the State, among other things, that he was a public officer in June, 1869; that he went to St. Joseph, Missouri, with a requisition from the governor of Iowa for defendant and Marquis Jones; that when he got there he found them in jail; that he brought them back to Des Moines, from Missouri. "On the way coming back, defendant said they would not have any trouble when they got back to Des Moines. That they would soon get out of this scrape. Marquis and defendant both said they were good shots and could shoot any thing any distance. Marquis said that if they had had any show they could not have taken them."

Henry Pritchard, a witness for the State, also stated that he came in the same car with defendant (from St. Joseph to Des Moines); that "defendant remarked to the other that when he tried to make his escape he could have got away by shooting a man. The other one said he would have done it. He called himself a marksman and

said he could take a man's heart every pop. This was said by Marquis and not by defendant."

Upon this testimony the court instructed the jury, in the fourth paragraph of the charge, as follows:

"If you find that the defendant made confessions out of court, they will not warrant a conviction unless accompanied with other proof that the offense was committed. But such confessions, if you find any were made, are proper evidence for you to consider with the other evidence in the case."

There was no evidence of any *confession* by the defendant. The instruction was based upon the statements of the defendant, above set out, and was erroneous and prejudicial to the accused.

A confession, according to Webster, is "the acknowledgment of a crime or fraud," etc.; Bouvier defines it to be "the voluntary declaration, made by a person who has committed a crime or misdemeanor, to another, of the agency or participation which he had in the same." 1 Bouv. Law Dic. 266. The evidence does not purport to be of any admission or acknowledgment by the defendant, that he had any agency or participation in the commission of the crime charged against him. The statements made by the defendant, as detailed by the witnesses, were proper for the consideration of the jury, together with all the other facts and circumstances of the case. It was the province of the jury to draw the legitimate inferences from the statements as well as from the conduct of the defendant, and to determine whether, from such statements and conduct, an admission of guilt was properly inferable. That the statements made by the defendant to the officer contain or imply a confession of guilt, can be reached, if at all, only by argument, and the court, by denominating them confessions, determined the argument in favor of the State. By the instruction the court gave the statements the force and weight of a confession, whereas it was the province of

the jury to decide upon their weight. Had there been a *deliberate confession of guilt* given in evidence, it would have been the clear province of the court to have told the jury that such confession, unless made in open court, would not warrant a conviction unless accompanied with other proof that the offense was committed. Rev. of 1860, § 4806. But the question here was, whether the statements of the defendant did or did not imply any admission of guilt, and was not a question as to the weight to be given to a deliberate confession.

II. The appellant assigns as error the giving of the fifth paragraph of the charge of the court, which is as follows : " If you fail to find from the evidence that the defendant was in any manner engaged in the stealing of said horse, *and* if you find from the evidence that he and M. D. Jones purchased the said horse, it will be your duty to acquit him."

This instruction was also erroneous, to the defendant's prejudice. It was sufficient to entitle the defendant to an acquittal, if the jury *failed to find* from the evidence that he was in any manner engaged in the stealing of the horse. It was not necessary that, in addition to this, that the evidence should show that defendant and M. D. Jones purchased the horse. If the evidence failed to show that defendant was in any manner connected with the larceny, that was enough. He was not required to show that he came honestly by the horse. The instruction directed the acquittal of the defendant only in case the State failed to prove him guilty *and* upon his proving his own innocence.

The judgment is reversed and a new trial ordered.

Reversed.