STATE OF IOWA, appellee, v. JOHN W. SALTZMAN, appellant.

No. 47625.

(Reported in 44 N.W.2d 24)

1374

SEPTEMBER 19, 1950.

REHEARING DENIED DECEMBER 18, 1950.

Charles P. Howard, of Des Moines, for appellant.

Robert L. Larson, Attorney General, Don Hise, First Assistant Attorney General, Edwin S. Thayer, County Attorney, and Waldo F. Wheeler, Assistant County Attorney, for appellee.

OLIVER, J.—The indictment charged defendant transported intoxicating liquor from the State of Nebraska into the State of Iowa in violation of section 125.26, Code of Iowa, 1946. Trial resulted in his conviction and this appeal.

No evidence was offered by defendant and there was no substantial conflict in the evidence of the State. On the evening of March 9, 1949, a Buick sedanette, immediately followed by a Ford, stopped across from and under the floodlights of the Tankar Oil Company filling station, just north of Des Moines on highway 69 (East Fourteenth Street). The Buick was heavily loaded in the back. The trunk was partly open and appeared to be loaded with boxes or suitcases or "something of that sort." Defendant and another man were in the Buick. Defendant got out "and then he came running across the street" to the filling station. "Well, he seemed to be frightened. He said 'call the police' * * * he was being hijacked." He made the call himself and "I heard him say 'operator', and give him the police." Then he made a second telephone call to someone and said "he had lost his stuff."

Leo Leonard, a state highway patrolman, heard the police radio call and drove to the filling station. When he arrived defendant was "just hanging up the receiver on the telephone." In the meantime, the Ford car had "pushed the Buick away, north." A station attendant prepared to follow the cars in his automobile to get the license number of the Ford but hesitated

when defendant said "they had a gun." When the attendant started in pursuit, their taillights were still visible but he was unable to catch them "before they got over the hill" and vanished. Defendant said the Buick belonged to him. "He said at the oil station he jerked the keys out and opened the door and ran into the oil station. In the meantime one of the fellows * * * the man in the back car * * * ran and jerked the trunk of the Buick open and the other fellow says, 'not here', so they pushed it on away."

Patrolman Leonard testified: "* * * we wanted to get out and get that car. That was the main thing. I asked him [defendant] to get in the car and we took out in what direction we thought they might have gone, and at that time he told me he had a load of government liquor in the car." Defendant gave Leonard the license number of his car and Leonard "called it in" by radio. Soon the radio broadcast the news it had been found. They drove to the scene and defendant said it was his car. The trunk was open but there was nothing in it nor elsewhere in the car.

The car was then returned to the filling station where defendant gave a more detailed account of the hijacking and surrounding circumstances, stating he was bringing from Omaha, Nebraska, eleven cases of whisky and alcohol, two men stopped him in Des Moines, he described their car and said it bore a foreign license plate, they followed him across the city, finally hijacked his liquor at the filling station and threatened to kill him when he went back to the second car to obtain the license number. Defendant voluntarily repeated this recital several times. Two deputy sheriffs and other officers were present.

Deputy Sheriff Hildreth testified, after this, "I asked him to come down to the county jail, if he would be willing to make a statement of the events that happened, which he said he would be glad to, and Highway Patrolman Leo Leonard and myself took a statement from Mr. Saltzman [defendant] at the Polk County jail that evening." Hildreth did the questioning and Leonard the typing, and the statement was read by defendant who said it was "true and correct, but he didn't wish to sign it."

The statement, Exhibit A, recites in part:

"I left Omaha * * * with a load of liquor designated as follows: 3 cases of alcohol, 2 cases of Scotch, 1 case of Canadian Club, 4 cases of Paul Jones and 1 case of Kinsey. This liquor was purchased at the Lone Star Liquor Co. * * * for the amount of $565. * * * I followed Highway 6 from Omaha, Neb., into Des Moines, Ia., until I came to West 6th or 6th Ave., then turned north to Madison and east to 14th or U. S. 69 and then north to the Tankar Oil Station where my car was taken from me. I ran into the station, using their telephone to notify the authorities of the incident. These two fellows which hijacked me first stopped me when I reached Madison St. telling me they were state men. One entered my car while the other followed directing me east on Madison and north on E. 14th where my car was taken from me. I arrived in Des Moines from Omaha around 7:30 p.m. 3-9-49."

The instrument was dated and signed by the two officers with the notation that Saltzman refused to sign but "states the above is true."

I. Defendant assigns as error the admission of the statement, Exhibit A, in evidence over his objection that it was not signed by him. Although no decision of this court has been called to our attention, it has been generally held, in the absence of contrary statutory provisions, that such a written statement if otherwise proved to have been made by a defendant is admissible although not signed by him. Prather v. State, 76 Okla. Crim. 385, 137 P.2d 249; Bosko v. People, 68 Colo. 256, 188 P. 743; State v. Haworth, 24 Utah 398, 68 P. 155, 156; State v. Foulds, 127 N. J. Law 336, 23 A.2d 895, 897; State v. Folkes, 174 Or. 568, 150 P.2d 17, 20, certiorari denied 323 U. S. 779, 65 S. Ct. 189, 89 L. Ed. 622; Mobley v. State, 227 Ind. 335, 85 N.E.2d 489; Gray v. Commonwealth, 293 Ky. 833, 170 S.W.2d 870; Haines v. State, 158 Fla. 9, 27 So.2d 414; 22 C. J. S., Criminal Law, section 833, page 1456. The objection was properly overruled.

II. Error is predicated upon the overruling of defendant's motion for directed verdict based upon the insufficiency of the evidence to warrant a conviction. Section 782.7, Code of Iowa, 1946, provides: "The confession of the defendant, unless

made in open court, will not warrant a conviction, unless accompanied with other proof that the offense was committed."

The required "other proof" of the corpus delicti may be by circumstantial evidence as well as by direct evidence. State v. Novak, 109 Iowa 717, 734, 735, 79 N.W. 465; State v. Henricksen, 214 Iowa 1077, 1082, 243 N.W. 521; State v. Townsend, 191 Iowa 362, 364, 365, 182 N.W. 392; State v. Kelley, 193 Iowa 62, 66, 186 N.W. 834; 20 Am..Jur., Evidence, section 1231; 23 C. J. S., Criminal Law, section 916c, page 185.

■ Exhibit A contained all the essential elements of the crime charged. Hence, it was a confession within the purview of the statute. State v. Webb, 239 Iowa 693, 700, 31 N.W.2d 337; State v. Hofer, 238 Iowa 820, 28 N.W.2d 475; State v. Davis, 212 Iowa 131, 134, 235 N.W. 759.

■ At this point the question is whether the confession was accompanied with other proof that the offense was committed, as required by the statute. Our decisions have said the statute accords with the general rule in this country that an extrajudicial confession must be corroborated by other proof. State v. Webb, 239 Iowa 693, 702, 31 N.W.2d 337, 342. This other evidence need not of itself, and independent of the confession, be sufficient to prove the commission of the crime beyond a reasonable doubt. It is sufficient if when considered with the confession it establishes beyond a reasonable doubt that the crime was in fact committed by someone. State v. Westcott, 130 Iowa 1, 8, 104 N.W. 341, 343; State v. Stewart, 231 Iowa 585, 588, 1 N.W.2d 626: State v. Henricksen, 214 Iowa 1077, 243 N.W. 521; Evans v. United States, 10 Cir., Kan., 122 F.2d 461, certiorari denied 314 U. S. 698, 62 S. Ct. 478, 86 L. Ed. 558; 20 Am. Jur., Evidence, sections 1233 and 1234; 22 C. J. S., Criminal Law, section 839, pages 1474–1477; 23 C. J. S., Criminal Law, section 916, pages 184, 185.

State v. Webb, 239 Iowa 693, 703, 31 N.W.2d 337, 342, states:

"The required 'other proof' is perhaps not strictly corroborative but rather supplemental. The language of the statute is somewhat significant. It does not mention 'corroboration' but

says 'unless *accompanied with* [*by*] other proof' * * * that *someone* is guilty."

The crime of illegal transportation of .liquor into the state is essentially a continuing act, not confined in its scope to the single instant of passage across a state boundary. Gregg v. United States, 8 Cir., Mo., 113 F.2d 687, 691. In this case defendant's criminal act would continue until the hijackers took control of the transportation.

The text in 20 Am. Jur., Evidence, section 1233, page 1086, states:

"The grounds on which the rule requiring independent proof of the corpus delicti rests are the hasty and unguarded character which confessions often have, the temptation which for one reason or another a person may have to say that which he thinks it most for his interest to say, whether true or false, the liability which there is to misconstrue or report inaccurately what has been said, the danger of a conviction when no crime may have been committed,. the difficulty of disproving what may be said, and the feeling that the rule best accords with the humanity of the criminal law and with the great degree of caution applied in receiving and weighing the evidence of confessions in other cases."

See also Commonwealth v. Killion, 194 Mass. 153, 80 N.E. 222, 10 Ann. Cas. 911.

Most of the evidence in this case concerns what transpired during the period beginning with the arrival of defendant's car and the hijackers' car at the filling station and ending with defendant's final departure from there a short time later. This period was crowded with kaleidoscopic action and excitement for defendant. He appeared to be frightened as he jumped out of the Buick car and ran across to the oil station exclaiming, "call the police," he was "being hijacked." He rushed to a telephone and called the police, saw the hijackers start to remove the contents of his car and then push the car away with their Ford automobile, warned the station attendant the men had a gun, joined patrolman Leonard in pursuit of defendant's car and the hijackers saying there was a load of liquor in his car, heard the

radio announce his car had been found about one mile from the filling station, proceeded there, identified the car and saw its contents had been taken, returned to the filling station and told of his trip to Omaha and the hijacking so repeatedly as to attract attention.

It is apparent that during all of this short period defendant was under the spell of the exciting circumstances which had enveloped him and that everything said or done by him was spontaneous. Hence, his exclamations, declarations and statements, as well as everything else which transpired during that period, were part of the res gestae. State v. Berry, 241 Iowa 211, 215–217, 40 N.W.2d 480, 482–484; State v. Stafford, 237 Iowa 780, 784 et seq., 23 N.W.2d 832; Bruce v. United States, 8 Cir. Mo., 73 F.2d 972, 974. 22 C. J. S., Criminal Law, section 662, page 1046, states, "the res gestae is not confined to the act charged but includes acts, statements, occurrences, and circumstances which are substantially contemporaneous with the main fact and so closely connected with it as to form a part or a continuation of the main transaction and to illustrate its character." As pointed out in State v. Lewallen, 198 Iowa 382, 389, 199 N.W. 266, 269, "There must be a main or principal fact, which may, however, be either the ultimate fact to be proved or some fact evidentiary of that fact." See also 32 C. J. S., Evidence, section 405.

"Statements made as part of the res gestae are substantive evidence of the matters stated." Muntz v. Travelers Mut. Cas. Co., 229 Iowa 1015, 1025, 295 N.W. 837, 843; State v. Minella, 177 Iowa 283, 308, 309, 158 N.W. 645. "The rules relating to res gestae on the one hand, and to admissions and confessions on the other, are separate and distinct; * * *." 22 C. J. S., Criminal Law, section 667, pages 1055, 1056. State v. Woodmansee, 212 Iowa 596, 606, 607, 233 N.W. 725, 731, states:

"The statement * * * was admitted on the theory that what was said and done at that time was *res gestae* and correctly so. There was no thought on the part of anyone that this particular testimony was introduced in evidence for the purpose of an admission against interest on the part of the defendant."

22 C. J. S., Criminal Law, section 816a, pages 1421, 1422, states: "* * * the term 'confession' excludes statements which are a part of the res gestae."

In State v. Clark, 102 Mont. 432, 437, 58 P.2d 276, 278, defendants were charged with gambling. The sheriff testified to statements made by them during the progress of a stud poker game referring to having bet and lost money. Defendants contended the evidence was insufficient to support the verdicts of guilty in that the corpus delicti was not proved sufficiently, independently of their confessions and admissions. Pointing out that these statements were part of the res gestae the court held that, as applied to the corpus delicti rule, "any statements made by a party which are a part of the res gestae are neither admissions nor confessions."

In Stout v. State, 142 Tex. Crim. 537, 540, 155 S.W.2d 374, 376, it was contended defendant's statement was hearsay and a confession not made in compliance with the statute. The court said, "The statement was res gestae, and not subject to either objection."

In Calloway v. State, 92 Tex. Crim. 506, 517, 518, 244 S.W. 549, 554, the statements were made by defendant five or ten minutes after the shots were fired. The court quoted from an earlier decision:

" 'If res gestae, then the evidence was admissible not withstanding it might not be admissible as a confession or admission, because res gestae is independent of, superior to, and cannot be restricted or limited by the rules relating to confessions or admissions made after arrest. * * * Res gestae are events speaking for themselves through the instinctive words and acts of participants, not the words and acts of participants when relating the events.' "

22 C. J. S., Criminal Law, section 730b, page 1248, states, "an extrajudicial admission * * * is not sufficient of itself to support a conviction, unless it is also a part of the res gestae." In Majors v. State, 100 Tex. Crim. 304, 306, 273 S.W. 267, 268, defendant complained of the refusal of the court to instruct that he could not be convicted upon his own uncorroborated

incriminatory statements alone. In affirming the conviction the court said, "These were res gestae statements, and we do not believe that the principle of law contended for by defendant would be applicable to res gestae statements."

It is true admissions and confessions are received in evidence under exceptions to the hearsay rule. However, this does not mean that the "other proof" of the corpus delicti may not come indirectly from the lips of defendant. Although such other proof may consist of evidence of exclamations and statements of defendant it may be sufficient if it is free from the inherent weaknesses of extrajudicial confessions or admissions. It is obvious evidence of res gestae exclamations and statements is free from such inherent weaknesses. Although the authorities cited above do not mention this in so many words they must necessarily recognize the reason why such evidence may in itself be sufficient to support a verdict of guilty. The reason is stated as follows in Warszower v. United States, 312 U. S. 342, 347, 61 S. Ct. 603, 606, 85 L. Ed. 876, 880:

"The rule requiring corroboration of confessions protects the administration of the criminal law against errors in convictions based upon untrue confessions alone. Where the inconsistent statement was made prior to the crime this danger does not exist. Therefore we are of the view that such admissions do not need to be corroborated. They contain none of the inherent weaknesses of confessions or admissions after the fact."

■ ■ Defendant's acts and words during the period in question, without exception, accord with and support his subsequent confession. His first exclamation that he was "being hijacked" conveyed the thought he was hauling liquor. According to State v. One Certain Buick Sedan, 209 Iowa 791, 798, 799, 229 N.W. 173, a hijacker is one who holds up, and steals booze from, the vehicles of others. Webster's New International Dictionary, Second Edition, defines hijack—"to rob (from) bootleggers and rumrunners." As they started the pursuit of the hijackers defendant told Leonard he had a load of government liquor in the car. Upon returning to the filling station defendant repeatedly enlarged upon this statement. A witness saw defendant's car with the rear part heavily loaded with boxes

or suitcases and saw the Ford automobile push it away. Soon defendant's car was found with nothing in it. All the circumstances and exclamations and statements fit together. Aside from the formal confession they would have been sufficient, in themselves, to support the conviction. We are satisfied also the evidence of the occurrences and defendant's exclamations at the filling station during the perhaps three or four minutes from the time he was first seen until he joined in the pursuit, without more, would have constituted ample "other proof" of the corpus delicti, accompanying his confession, to warrant submission of the case to the jury.

III. Defendant complains the assistant county attorney who prosecuted the case was guilty of prejudicial misconduct in referring to defendant, in his argument, as a gangster. Upon defendant's objection the trial court promptly reprimanded the prosecutor in open court, stating there was no evidence in the record to support the statement. The prosecutor then frankly stated: "I stand corrected, your honor." Although the argument was improper we think the action of the court and the retraction by the prosecutor rendered it nonprejudicial. State v. Dobry, 217 Iowa 858, 865, 250 N.W. 702; State v. Bell, 235 Iowa 767, 16 N.W.2d 218.—Affirmed.

GARFIELD, C.J., and HALE, BLISS, WENNERSTRUM, and SMITH, JJ., concur.

MULRONEY, MANTZ and HAYS, JJ., dissent.

MULRONEY, J. (dissenting)—It is idle to talk about the grounds on which the rule requiring independent proof of the corpus delicti rests. It is not the common-law rule that is here invoked. It is a statute (section 782.7, Code, 1950) which in positive language prohibits the conviction unless there is proof, other than the defendant's extrajudicial confession, that the offense was committed. In other words, there must be proof of the corpus delicti other than the extrajudicial confession or declarations of the accused. I cannot see how one can read this record, and exclude all of the statements attributed to the defendant, and find any testimony that the crime of illegally transporting intoxicating liquor was committed. Nor do I understand the

majority to hold there is sufficient proof of the corpus delicti without considering the statements and declarations of the defendant. As I read the majority opinion I understand it holds the "other proof" or the proof of the corpus delicti can come "indirectly from the lips of defendant"; that if the proof of exclamations and statements of the defendant are sufficient to show they were res gestae statements and declarations then they are "free from the inherent weaknesses of extrajudicial confessions or admissions", and such evidence would in itself be sufficient proof of the corpus delicti on which to support the conviction.

But the probative value of the evidence of confessions or admissions is, as I see it, unimportant under the statute and the fact that the evidence as to confessions and admissions is admitted under various rules of evidence is likewise unimportant. As I read the statute it means there shall be no conviction when the only proof of the corpus delicti—here the illegal transportation of intoxicating liquor by someone—is to be found in the defendant's confession and admissions. A confession or admission may be strong or weak, depending perhaps upon when it is made, but if it is extrajudicial the legislature in clear language has said it is insufficient. A confession is no less extrajudicial because it is or may be admissible under the res gestae rule governing admissibility of evidence. Carr v. State, 21 Ala. App. 299, 300, 107 So. 730. If the defendant's admission or confession is to be the only proof of the corpus delicti then nothing short of a judicial confession will support the conviction. In the above cited case the opinion holds that the statements of the defendant at the time of his arrest were "in the nature of a confession or an admission of guilt"; that they were admissible under the principle of res gestae, but the court went on to hold that such statements even though admissible as part of the res gestae are "a mere extrajudicial confession * * * and cannot support a conviction."

I think the closing lines of the early opinion of this court in State v. Dubois, 54 Iowa 363, 365, 6 N.W. 578, 579, are particularly applicable here. There Justice Beck, after reviewing all of the testimony, said:

"In all this testimony there is not one word other than the confessions of defendant, tending to establish the corpus delicti— that the offense was committed. Our views and conclusions are based upon the most familiar principles of the law. We cannot hesitate to apply them in this case, though there is reason to fear that, by their application in this instance, a guilty man escapes punishment. But, however strong may be our belief of defendant's guilt, we cannot overturn the law to sustain his conviction. By so doing justice would be more gravely offended than by his escape from punishment by the failure of the prosecution to produce legal evidence that an offense had been committed."

I would reverse.

HAYS, J., joins in this dissent.

MANTZ, J. (dissenting)—I am unable to concur in the majority opinion and respectfully dissent therefrom.

There are no material conflicts in the facts as they appear from the record. The matter was submitted to the jury over the objection of appellant, who moved for a directed verdict. A verdict of guilty followed. This verdict the court refused to set aside.

It seems to me that there are but two questions involved: First: Was there sufficient evidence to warrant the trial court in submitting the issue of the guilt of the defendant to the jury? If that be answered in the negative that ends the case. Second: If the court properly submitted the case to the jury, was there prejudicial error committed by misconduct of the prosecuting attorney? If there was such error then the case should be reversed. I am of the opinion that the trial court erred in both instances.

As I read the record there was an utter and absolute failure to establish the corpus delicti—the illegal transportation of intoxicating liquor; there was no evidence of that fact aside from the extrajudicial admissions of the appellant; there was no confession made by the appellant as required by section 782.7, Code of 1946. This statutory provision is set out in the majority opinion.

The majority opinion stresses the importance of the admissions of the appellant as set forth in a paper prepared by the officers, reciting statements made by him in response to questioning sometime after the alleged crime. This so-called statement, appellant refused to sign. To call this paper a confession is to pervert the language of the statute. Before such statement could be used the corpus delicti must be shown. There are three cases cited in the majority opinion wherein the statement (Exhibit A) is designated a confession. In my judgment none of these cases is applicable to the present record. In State v. Webb, 239 Iowa 693, 31 N.W.2d.337, the corpus delicti was abundantly proved— the burning of a building. There was a signed statement of Webb acknowledging the criminal act. In State v. Hofer, 238 Iowa 820, 28 N.W.2d 475, the corpus delicti—murder—was fully shown and signed admissions were given by Hofer. One of the points at issue in the case was whether the statements were voluntarily made. In State v. Davis, 212 Iowa 131, 235 N.W. 759— breaking and entering—the corpus delicti was shown. Admissions were made by defendant to various officers. In the opinion Justice Evans called attention to the difference between a confession and an admission. In each of the three cases above referred to there was no question as to the corpus delicti. In the instant case there is little, if anything, aside from Saltzman's statements, to show the corpus delicti, that is—illegal transportation of intoxicating liquor.

I call attention to the record to show how flimsy is the evidence upon which the majority opinion rests to show the corpus delicti independent of what appellant stated.

Appellant drove up to the filling station, jumped out of his car and rushed to telephone the police. While he was doing so two strangers took his car and pushed it out of sight. None of those present saw any intoxicating liquor, bottles, jugs, or containers about the car. There was some slight evidence that the rear of the car seemed heavily loaded and that through the slightly raised lid of its rear there appeared to be some boxes. Take out of the case what appellant said, either at the time or later when he was being detained at the police station, and what is left of the record to show the corpus delicti? To bolster up his statements by appealing to the rule of res gestae is beside

the point and proves nothing. No one, aside from appellant, knew the contents of the car, and to rest a conviction on the guess, hazard and speculation of casual and indifferent onlookers is to run in the face of our decisions that the corpus delicti must be shown beyond reasonable doubt. State v. Keeler, 28 Iowa 551.

I repeat—leave out of the case what the defendant said as to his cargo—what have you? It is idle to argue that his extrajudicial statements were sufficient to sustain a verdict of guilty.

Let us assume a state of facts. A stranger drives his car up to a filling station and jumps out, orders the attendant to hurry up and fill the gas tank—he is excited. In a rather incoherent manner he tells the attendant that he has shot and killed a hitchhiker who tried to rob him; the attendant observed an object in the rear seat covered with a lap robe; the car serviced, the stranger drove away at a rapid rate; the attendant called the officers and they pursued. Several hours later they located the driver in his car and told him what they had learned, arrested him, and demanded an explanation. He said, "I picked up the fellow, he tried to rob me; I had a gun and shot and killed him." He was questioned by the officers and gave a detailed description of the hitchhiker. He stated that he made away with the body but refused to tell how or where. Assume that he was charged with murder; the body was never found, would this or any other court declare that the corpus delicti had been sufficiently shown? What more is there in the record in the instant case?

Following, I call attention to various holdings of this court dealing with the establishment of the corpus delicti; also, relating to admissions and confessions. In many of the cases cited in the majority opinion the corpus delicti was shown and the issue turned upon the admissibility and applicability of the confessions urged—whether voluntary or otherwise.

The term "corpus delicti" has been variously defined. We said in State v. Millmeier, 102 Iowa 692, 698, 72 N.W. 275, 277, that primarily it means the "body of the offense." The opinion goes on to state that in the opinion of the court the term means, when applied to any particular offense, that the crime has actually been committed by someone; that it is made up of two

elements: first, that a certain result has been produced; second, that someone is criminally responsible for the result. The opinion further states that "direct evidence to establish either of these elements is not required, but, where circumstantial evidence is relied upon, it must be of the most *cogent and irresistible* kind. (Italics supplied.) Citing State v. Keeler, supra. In that case this court held that in a criminal prosecution the corpus delicti must be established by clear and distinct proof and beyond reasonable doubt.

In the case of State v. Cristani, 192 Iowa 615, 616, 185 N.W. 111, 112, Justice Weaver, speaking of the crime charged—arson —said:

"It is an elementary proposition of criminal law that, to be entitled to a conviction, the State must first establish the *corpus delicti*—the fact that a crime such as alleged has been committed by someone. This [fact] being established, the guilty connection of the accused with such offense must also be established, both beyond a reasonable doubt." (Citing State v. Millmeier, supra.)

"Corpus delicti", a proof of which is essential to sustain a conviction, consists of a criminal act, and to sustain a conviction there must be proof of the defendant's guilty agency to the production of such act. 1 Wharton, Criminal Evidence, section 324. The term has been variously defined: It is the body of crime or essence of crime. People v. Strook, 347 Ill. 460, 179 N.E. 821. It means the fact of crime or the body of the crime. Morris v. State, 109 Neb. 412, 191 N.W. 717. It is the element of the crime. People v. Fallon, 149 Cal. 287, 86 P. 689. It is the body of the crime. State v. Brassfield, 40 Idaho 203, 232 P. 1. It is the existence of the criminal act. State v. Nordall, 38 Mont. 327, 99 P. 960; Wilshusen v. State, 149 Neb. 594, 31 N.W.2d 544; Andersen v. State, 141 Neb. 306, 3 N.W.2d 447; People v. Beltowski, 71 Cal. App.2d 18, 162 P.2d 59; Schuble v. State, 226 Ind. 299, 79 N.E.2d 647; Warmke v. Commonwealth, 297 Ky. 649, 180 S.W.2d 872; State v. Teeter, Nev., 200 P.2d 657; State v. Whisler, 231 Iowa 1216, 3 N.W.2d 525; Osborn v. State, 86 Okla. Crim. 259, 194 P.2d 176; Evans v. State, 224 Ind. 428, 68 N.E.2d 546; Hawkins v. State, 219 Ind. 116, 37 N.E.2d 79; Pines v. United States, 8 Cir., Iowa, 123 F.2d 825.

In the case of State v. Whisler, supra, an arson case, the court dealt with the question as to the showing as to the corpus delicti. The opinion discusses a number of cases from this court dealing with such question. State v. Millmeier and State v. Cristani, both supra. In the Whisler case (page 1220 of 231 Iowa) this court quoted from the Millmeier case, part being as follows: "In our opinion, the term means, when applied to any particular offense, that the particular crime charged has actually been committed by someone."

In the case of Andersen v. State, supra, at page 309 of 141 Neb., page 448 of 3 N.W.2d, in speaking of the corpus delicti and the evidence required to convict, the court said: "One may not be convicted of a felony upon his unsupported extrajudicial confession that a crime has been committed, but such confession may be sufficient to prove the defendant's connection with the criminal act."

In the case of State v. Abrams, 131 Iowa 479, 484, 108 N.W. 1041 (carrying concealed weapons), there was the question as to whether certain admissions of the defendant amounted to a confession. On that subject the court (Ladd, J.) announced the rule to be that to constitute a confession the admissions or declarations must amount to an acknowledgment of the guilt of the offense charged, citing State v. Novak, 109 Iowa 717, 79 N.W. 465; State v. Glynden, 51 Iowa 463, 1 N.W. 750; State v. Knowles, 48 Iowa 598; State v. Jones, 33 Iowa 9.

In the case of Gregg v. United States, 8 Cir., Mo., 113 F.2d 687, 690 (Thomas, Circuit Judge C. C. A.), the defendant was charged and convicted of the crime of illegal transportation of liquor. A large cargo of liquor was found in an automobile then in the possession of the accused. When found, accused readily admitted that he was transporting the liquor from Illinois to Kansas. He signed a written confession as to where he got the liquor, and his destination. He was tried and convicted and on appeal urged there had been a failure to establish the corpus delicti de hors his confession. This claim was denied by the circuit court. However, that court in so ruling said: "It is the law that unless corroborated by independent evidence of the corpus delicti, the extrajudicial confessions or declarations

of a defendant charged with crime are not sufficient to authorize a conviction." (Citing Martin v. United States, 8 Cir., Neb., 264 F. 950, and Naftzger v. United States, 8 Cir., Kan., 200 F. 494.) The court went on to state that the evidence introduced by the Government corroborated Gregg's confession in every detail.

The distinction between confessions and admissions was dealt with in the case of Gulotta v. United States, 8 Cir., Mo., 113 F.2d 683 (Thomas, Circuit Judge C. C. A.), where Gulotta was charged and convicted of having falsely represented that he was a citizen of the United States. His conviction was set aside. Then the court called attention to the distinction between confessions and admissions. Therein the court stated that a confession is a declaration made by the accused admitting his participation in the crime with which he was charged and a direct acknowledgment of his guilt; that an admission is a statement, direct or implied, of facts tending to establish guilt; that such admission was not an acknowledgment of guilt but of facts and circumstances, which if taken in connection with proof of other facts may permit an inference of guilt. In support of the rule above-announced the court cited many authorities, among which was that of State v. Cook, 188 Iowa 655, 176 N.W. 674. See also Pines v. United States, 8 Cir., Iowa, 123 F.2d 825, and 127 A. L. R. 1120 (note 1130).

Also on the question of confession and the corpus delicti see State v. Stewart, 231 Iowa 585, 1 N.W.2d 626, and State v. Plude, 230 Iowa 1, 296 N.W. 732. Both of these cases relate to the question of the confession and do not overrule, reverse or criticize the rules above laid down.

The majority opinion holds that Saltzman's statement to the officers was a confession. I call attention to some of the authorities dealing with confessions in criminal cases. There is a marked difference in the two terms. See State v. Davis, supra.

In State v. Abrams, 131 Iowa 479, 482, 108 N.W. 1041, 1042, this court (Ladd, J.) referred to the statute, section 5491, Code of 1897 (now 782.7, Code of 1950), which provided: "The confession of the defendant, unless made in open court, will not warrant a conviction, unless accompanied with other proof that

the offense was committed." The charge against Abrams was that of carrying a concealed weapon. The defendant admitted that he always carried a revolver and that he had a right to do so.

The court goes on to say: "Confessions are either judicial or extrajudicial. Judicial confessions are those made in conformity to law before a committing magistrate or in court in the course of legal proceedings. Extrajudicial confessions are those which are made by a party elsewhere than before a magistrate or in court. These, by the great weight of authority, independent of statute, must be corroborated by proof of the corpus delicti." The court added that as there was no confession by the defendant and no other evidence of the corpus delicti the defendant should have been acquitted.

The question was dealt with by this court in State v. Cook, supra (a case of attempted breaking and entering). The evidence showed that someone attempted to open a screen door, but a woman inside screamed and the intruder fled. Cook was apprehended and when accused admitted that he went to the house and was using a flashlight to find the screen door hook when he was scared away. He told of going to the house and pointed it out to the officers. He admitted that he had tried to enter the house and talked to that effect to the sheriff and another person. The trial court overruled a motion for a directed verdict made by the defendant. This court held the ruling as error. The State claimed that the statement of defendant was a "confession", sufficient to have sustained a verdict of guilty. This court in answering that contention said at page 660 of 188 Iowa: "This position is untenable, for two sufficient reasons: First, there is no evidence of any 'confession', in the legal meaning of the word; and, second, if the statements attributed to the defendant be treated as a confession, it is still insufficient to sustain a conviction, under our statute." (Citing Code section 5491, Code of 1897, now 782.7, Code of 1950.) The court went on to state that a confession is an admission or acknowledgment of guilt of the very offense charged. The case further holds that an admission of the truth of the facts in themselves is not sufficient to constitute a confession although it might be admissible

as evidence to support the charge. The court said (page 661):
"The defendant's admission, as we have seen, consists simply in
pointing out the house, saying, in substance: 'That is the house.
I tried to get in, but was frightened away by the woman's
scream.'" The court called attention to its finding in the case
of State v. Knowles, 48 Iowa 598. The defendant was there
charged with the crime of forgery. The State offered in evidence
statements or admissions that he wrote the alleged false signature.
The trial court treated such statement as a confession. This court
ruled this was an error. In doing so it stated that in a confession
it is implied that the matter confessed was a crime. The court
in the Cook case further stated that even if it could be said that
a confession was proved, still it would not sustain a conviction,
under the statute, and further stated that in order to sustain
a conviction there must appear in the record some testimony
*wholly independent* of the statements of the defendant upon
which the jury could properly find that at the time and place
mentioned in the indictment some person attempted to break and
enter the residence with the intent to commit larceny. In 20 Am.
Jur., Evidence, section 484, page 423, it states the rule as well-
established that before a confession can be admitted in evidence
the corpus delicti of the crime must be established by independent
proof and that a failure to do so will exclude the confession from
evidence.

The majority opinion treats the statement made by Saltz-
man to the officers as a confession. We call attention to the
language of this court in the case of State v. Cook, supra. There
Chief Justice Weaver called attention to the requirements of
the statute (now section 782.7, Code of 1950) and stated that a
confession is an admission or acknowledgment of the crime
charged; but an admission of the truth of facts not in them-
selves sufficient to constitute the alleged offense is not a con-
fession of guilt.

In the case of State v. Thomsen, 204 Iowa 1160, 216 N.W.
616 (a charge of selling liquor), the prosecuting witness testified
that defendant told her that he had sold the liquor. The State
relied upon this as a confession to sustain a conviction. In its
opinion, this court (by Justice Albert) stated that "for the

purposes of 'this' case, we accept it as a confession." Immediately following, the court quoted the statute, section 13903, Code of 1924 (now 782.7) and then stated:

"To put this in another way, the *corpus delicti* of the crime must be proved; and, regardless of what the confession may be, if the *corpus delicti* is not proved, the conviction cannot stand. Such has ever been the rule of. this court, since the case of State v. Turner, 19 Iowa 144, and has been consistently applied. See State v. Lewis, 45 Iowa 20; State v. Feltes, 51 Iowa 495; State v. Dubois, 54 Iowa 363; State v. Westcott, 130 Iowa 1; State v. Abrams, 131 Iowa 479.

"As applied to this case, there must be evidence to show that this defendant was conducting a nuisance at the time and place in question, and this evidence must come from sources other than. the confession made outside of open court. This does not mean that the person to whom the confession was made cannot also testify to the *corpus delicti*, but means that, regardless of the source from which it comes, and regardless of the contents of the confession, if there is not some other testimony, aside from the confession itself made outside of open court, a conviction cannot stand."

The second error urged was that of misconduct of the assistant county attorney in closing argument. Therein he stated:

"Mr. Howard [counsel for appellant] has the audacity to stand here and ask you to free this gangster, this racketeer." Objection was promptly and properly made by appellant's counsel. The court inquired of the assistant county attorney: "Is that what you said?" The answer was "Yes sir." The court: "Well there isn't any evidence of course to that effect." Mr. Wheeler: "I stand corrected, your honor."

Here we have a statement clearly outside the record, literally reeking and saturated with prejudice. We have the court stating that there was no such evidence in the record and the assistant county attorney blandly admitting such fact. The statement was not stricken from the record, the jury was not

admonished to disregard it and no instruction dealt with it. The effect of such a statement could not be eradicated. To say that what the court stated was a reprimand or an admonition is absurd. The record goes to show how far the mistaken zeal of prosecutors will take them in order to convict—in other words, to be able to put another notch on their pistol. To permit such a situation to exist in the trial of a criminal case violates the rights of the accused at the very fundamentals. It makes a farce out of a proceeding where the liberty of one accused is at stake.

The practice of prosecutors to go outside the record has been frequently condemned by this court in numerous cases and convictions have been frequently reversed. See State v. Williams, 122 Iowa 115, 97 N.W. 992; State v. Hector, 158 Iowa 664, 138 N.W. 930; State v. Henderson, 212 Iowa 144, 232 N.W. 172:

As to the duties of the prosecuting attorney we cite the statement of the late Justice Stevens in State v. Weaver, 182 Iowa 921, 927, 166 N.W. 379, 381, wherein it was said: "The duty of the prosecuting attorney is not alone to secure a conviction of the guilty, whenever possible, but also to safeguard the rights of the accused, by closely observing the rules of evidence and prescribed procedure." On the same subject see State v. Giudice, 170 Iowa 731, 153 N.W. 336, Ann. Cas. 1917C 1160, and State v. Peirce, 178 Iowa 417, 159 N.W. 1050. In the above cases there was a reversal, this court holding that the act of the prosecuting attorney in argument stating matters not in evidence was highly prejudicial and was a violation of the rights of those accused to a fair trial. To characterize the appellant as a gangster and a racketeer was virtually to accuse him of being a criminal. Both of these terms are current in the underworld and to the lay mind one who takes part therein is a criminal of the first order.

For a prosecutor to go so far outside the record simply emphasizes the fact that he was trying to secure a conviction on what is sometimes called "general principles", realizing that his evidence to sustain a conviction was so flimsy and wanting that an appeal to prejudice would fill in the gap.

It seems to me that we should not disregard precedent except for the most compelling reasons. Certainly expediency and the desire to arrive at a certain result should never justify it. The bench and bar have long relied upon precedents to guide them. I deem this to be necessary to the stability of our legal principles.

It is possible that the defendant was transporting something in his automobile which the law prohibited. Possibly he was guilty of the charge. But we are to bear in mind that the law was not made for individuals. The individual has certain rights guaranteed by our laws. He is presumed innocent. He is entitled to his plea. The State must show his guilt beyond a reasonable doubt. It is not a judicial function to do otherwise than to follow the law and to require that before a man is deprived of his liberty the law be followed. The law to be followed is found in the statutes as construed and interpreted by the prior rulings of the court.

In this connection I desire to call attention to the language of Chief Justice Weaver in State v. Cook, supra, at page 663 of 188 Iowa, page 677 of 176 N.W., wherein a conviction was set aside on a claim that the defendant had confessed:

"It would be a dangerous precedent to permit this conviction to stand. It may be, and perhaps is, true that the accused is an undesirable citizen, of whose presence the community would be glad to be relieved; but every accused person, without respect to his general merits as a citizen, has the right to insist that no judgment shall be entered, depriving him of life or liberty, except by due process of law, and upon competent and sufficient evidence of his guilt of the very offense with which he stands charged."

This court has so frequently held that errors in criminal cases are presumed to be prejudicial that citation of authorities becomes unnecessary.

I would reverse.

HAYS, J., joins in this dissent.